IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GLAXOSMITHKLINE LLC, SMITHKLINE BEECHAM (CORK) LIMITED<br><br>Plaintiffs,<br><br>v.<br><br>TEVA PHARMACEUTICALS USA, INC.<br><br>Defendant. | CIVIL ACTION NO. _____<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT FOR PATENT INFRINGEMENT

For their Complaint against Defendant Teva Pharmaceuticals USA, Inc. ("Teva"), Plaintiffs GlaxoSmithKline LLC ("GSK") and SmithKline Beecham (Cork) Limited ("SB Cork"), by their attorneys, allege as follows:

## NATURE OF THE ACTION

1.  This is an action for infringement of United States Patent No. RE40,000 relating to the use of carvedilol in decreasing mortality caused by congestive heart failure in a patient.

## THE PARTIES

2.  Plaintiff GSK is a company organized and existing under the laws of the State of Delaware, with a principal place of business at 5 Crescent Drive, Philadelphia, PA 19112.

3.  Plaintiff SB Cork is a corporation organized and existing under the laws of Ireland, having its principal office at Currabinny, Carrigaline, County Cork, Ireland.

4.  On information and belief, Defendant Teva is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1090 Horsham Road, North Wales, PA 19454.

1

**JURISDICTION AND VENUE**

5. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100 et seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Teva. Teva is a corporation organized and existing under the laws of the State of Delaware, has systematic and continuous contacts with this judicial district, and has committed acts of patent infringement giving rise to this action within this judicial district, including placing carvedilol 3.125 mg, 6.25 mg, 12.5 mg and 25 mg tablets into the stream of commerce for infringing use under circumstances such that Teva reasonably should have anticipated being subject to suit in this judicial district. The Court also has personal jurisdiction over Teva because the acts of patent infringement are aimed at this judicial district and/or have effect in this judicial district, including harm and injury to Plaintiffs, who manufacture drug products covered by United States Patent No. RE40,000 for sale and use throughout the United States, including the State of Delaware.

7. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

**BACKGROUND**

**A. Carvedilol, Sold Under The Tradename COREG®, Decreases Mortality For Congestive Heart Failure Patients**

8. Carvedilol belongs to a class of chemical compounds known as beta-blockers, which are drugs often used to treat patients with high blood pressure. On March 31, 1993, after conducting hypertension clinical trials with carvedilol, GSK filed a New Drug Application ("NDA") No. 20-297 on carvedilol tablets for management of essential hypertension. On September 14, 1995, GSK received approval from the Food and Drug Administration ("FDA") to market carvedilol tablets in the United States for management of hypertension.

2

9. Meanwhile, starting in the late 1980's, GSK researchers, in collaboration with researchers from Boehringer Mannheim, explored the possibility of using carvedilol to treat heart failure.

10. Heart failure is a clinical description of the inability of the heart to deliver sufficient oxygen to meet the body's needs and is associated with substantial mortality. According to Centers for Disease Control and Prevention, about 5.1 million people in the United States have heart failure, and about half of people who develop heart failure die within 5 years of diagnosis. *See* http://www.cdc.gov/dhdsp/data_statistics/fact_sheets/fs_heart_failure.htm.

11. At the time of GSK researchers' endeavor, beta-blockers were clinically contraindicated for heart failure. Despite this conventional wisdom, starting in or around 1988, GSK researchers conducted carefully designed clinical studies to evaluate the effects of carvedilol on heart failure patients.

12. In or around 1992, after initial results from the pilot studies were analyzed, GSK researchers started designing a large-scale, double-blind, placebo-controlled, stratified clinical trial program, which became known as the US Carvedilol Heart Failure Study.

13. Randomization for the US Carvedilol heart Failure Study began on or about April 29, 1993. On February 3, 1995, the study was stopped early on the recommendation of the independent Data and Safety Monitoring Board ("DSMB") based on the finding of a significant effect of carvedilol on survival—an effect that exceeded all conventional boundaries used to stop clinical trials.

14. In or about November 1995, GSK submitted a supplement to NDA No. 20-297 (S-001) to seek approval for the use of carvedilol tablets as treatment for heart failure, including reducing the risk of mortality in heart failure patients.

15.     On May 29, 1997, the FDA approved GSK's carvedilol tablets for the treatment of mild to moderate heart failure of ischemic or cardiomyopathic origin, in conjunction with digitalis, diuretics, and ACE inhibitor, to reduce the progression of disease as evidenced by cardiovasular death, cardiovascular hospitalization, or the need to adjust other heart failure medications.  Carvedilol was the first beta-blocker ever approved by the FDA for the treatment of heart failure.

16.     After FDA approval, GSK began marketing and selling carvedilol 3.125 mg, 6.25 mg, 12.5 mg and 25 mg tablets in the United States under the COREG® registered mark, promoting only the heart failure indication.

17.     After the US Carvedilol Heart Failure Study was published, the study was criticized by many scientists, who continued to express skepticism on the effect of beta-blockers on survival in heart failure patients.

18.     In response, GSK sponsored another large-scale, prospective, randomized, double-blind, placebo-controlled trial of the effect of carvedilol on the survival of patients with severe heart failure, known as the Carvedilol Prospective Randomized Cumulative Survival Study, or the "COPERNICUS" study.  Randomization began on or about October 28, 1997.  The study was again stopped early on March 20, 2000, on the recommendation of an independent DSMB based on the finding of significant beneficial effect of carvedilol on survival that exceeded the pre-specified interim monitoring boundaries.

19.     In or about February 2001, GSK submitted another supplement to NDA No. 20-297 (S-007) to seek approval for the use of COREG® for severe heart failure as well.

20.     On November 1, 2001, the FDA approved GSK's carvedilol tablets for the treatment of mild-to-severe heart failure of ischemic or cardiomyopathic origin, usually in

addition to diuretics, ACE inhibitors and digitalis, to increase survival and, also, to reduce the risk of hospitalization.

21. On March 27, 2003, COREG® received approval for another indication: treatment of left ventricular dysfunction following myocardial infarction in clinically stable patients.

      B. **GSK Listed The Patent-in-Suit, And Its Predecessor, In The FDA's Orange Book As Covering Coreg®**

22. U.S. Patent Application No. 08/483,635, entitled "Method of Treatment for Decreasing Mortality Resulting from Congestive Heart Failure," was filed on June 7, 1995, and issued as U.S. Patent No. 5,760,069 ("the '069 patent") on June 2, 1998.

23. On November 25, 2003, the then-owner of the '069 patent instituted a reissue proceeding for the '069 patent before the Patent Office. On January 8, 2008, United States Patent No. RE40,000 ("the '000 patent"), entitled "Method of Treatment for Decreasing Mortality Resulting from Congestive Heart Failure," was duly and legally reissued from the '069 patent. The '000 patent concludes with nine method claims directed to methods of decreasing mortality caused by congestive heart failure in a patient in need thereof by administering carvedilol in a manner recited in the claims. A true and correct copy of the '000 patent is attached as Exhibit A.

24. SB Cork owns the entire right, title, and interest in the '000 patent by assignment.

25. GSK is an exclusive licensee of the '000 patent.

26. In conjunction with NDA No. 20-297, GSK submitted patent information relating to COREG®. In or about July 1998, the FDA published the original '069 patent in its list of "Approved Drug Products with Therapeutic Equivalence Evaluations," commonly referred to as

the "Orange Book," which provides notice concerning patents covering FDA-approved drugs. The '069 patent had a patent term that would expire on June 7, 2015.

27.   In February 2008, after the issuance of the '000 reissue patent, GSK submitted patent information regarding the '000 patent and requested the withdrawal of the '069 patent from the Orange Book. The '069 patent was de-listed from the Orange Book on or about February 7, 2008. The '000 patent was listed in the Orange Book on or about February 12, 2008, with patent use code U-233, "decreasing mortality caused by congestive heart failure." Like the original '069 patent, the '000 patent expires on June 7, 2015. The '000 patent is the only patent currently listed in the Orange Book for COREG®.

28.   Methods of using COREG® (carvedilol) 3.125 mg, 6.25 mg, 12.5 mg and 25 mg tablets are covered by at least one claim of the '000 patent.

**C.   Acts Giving Rise to This Action**

29.   The Drug Price Competition and Patent Term Restoration Act of 1984, commonly known as the "Hatch-Waxman Act," amended the Federal Food, Drug, and Cosmetic Act ("FDCA") and governs approvals of generic drugs. Under Section 505(j) of the amended FDCA, codified at 21 U.S.C. § 355(j), companies wishing to bring a generic version of a branded prescription drug to market can submit an Abbreviated New Drug Application ("ANDA") to the FDA.

30.   The ANDA process allows the generic drug company to avoid the expensive clinical trials required of an NDA holder to demonstrate a drug's safety and effectiveness by relying on the original NDA submission for that purpose. This process results in an enormous cost and time savings to the generic drug company. Reliance on the innovator company's data

and the ability to "free ride" on the innovator company's development saves the generic drug company countless millions of dollars and years in development and clinical research costs.

31.  The Hatch-Waxman Act also contains provisions meant to balance the competing interests of innovator and generic drug companies.  When seeking ANDA approval, the generic applicant must consult the Orange Book and make certain certifications with respect to each patent listed for the branded drug.  The generic applicant can certify that no patent information appears in the Orange Book ("Paragraph I certification"); that the listed patent has already expired ("Paragraph II certification"); that the applicant will not market the generic version before the date on which the patent will expire ("Paragraph III certification"); or that the patent is invalid or will not be infringed by the manufacture, use, or sale of the drug for which the ANDA is submitted ("Paragraph IV certification").  21 U.S.C. § 355(j)(2)(A)(vii)(I)-(IV).  When a Paragraph IV certification is made, the generic applicant must also provide notice of the certification to the innovator company, who can choose to enforce its patents in federal court.

32.  When the listed patent is a method-of-use patent, like the '000 patent, the generic applicant can attempt to seek FDA approval to label its drug only for uses not covered by the patent, in which case a statement is submitted under 21 U.S.C. § 355(j)(2)(A)(viii), commonly known as a "Section viii carve-out," in place of a patent certification.  If approved, the FDA will require the generic company to duplicate only the portions of the branded drug's label not protected by the applicable method-of-use patent, as identified in the patent use code.

33.  On information and belief, on or about March 6, 2002, Teva submitted an ANDA No. 76-373 for generic copies of COREG® (carvedilol) 3.125 mg, 6.25 mg, 12.5 mg and 25 mg tablets under section 505(j) of the FDCA.

34. As an ANDA filer, Teva was required to provide certifications addressing each of the patents listed in the Orange Book for COREG®, which at the time of Teva's submission included the '069 patent.

35. On or about May 29, 2002, GSK LLC received a letter from Teva, dated May 24, 2002, which stated that Teva had submitted ANDA No. 76-373, and that its ANDA contained a Paragraph IV certification with respect to the '069 patent, alleging that the '069 patent was invalid and unenforceable.

36. On information and belief, Teva amended its ANDA at least on July 25, and December 16, 2005, and July 5, July 9, and August 28, 2007. On information and belief, in one of those amendments, Teva amended ANDA No. 76-373 to change its paragraph IV certification with respect to the '069 patent to a Section viii carve-out statement.

37. On information and belief, the FDA granted final approval on or about September 5, 2007 for Teva's ANDA No. 76-373 with the Section viii carve-out, i.e., without those portions of the label relating to the heart failure indication. On information and belief, Teva launched its generic COREG® tablets in the United States immediately after receiving final approval.

38. However, on information and belief, at least as of May 2011, Teva revised its labels for generic COREG® 3.125 mg, 6.25 mg, 12.5 mg, and 25 mg tablets to expressly include the heart failure indication. Since at least May 2011, Teva's generic labels for all strengths have been identical to GSK's COREG® labeling and list "mild to severe chronic heart failure" as one of the approved indications and include safety and efficacy information relating to the heart failure indication. For example, like the COREG® label, Teva's generic COREG® labels state that carvedilol tablets "are indicated for the treatment of mild-to-severe chronic heart failure of

ischemic or cardiomyopathic origin, usually in addition to diuretics, ACE inhibitors, and digitalis, to increase survival and, also, to reduce the risk of hospitalization."

39. GSK did not receive and has not received any notice from Teva relating to Teva's labeling change or any other supplement relating to Teva's ANDA No. 76-373.

40. On information and belief, Teva has offered to sell and sold, and continues to offer to sell and sell, its generic copies of COREG® tablets with a label that includes the heart failure indication in the United States since at least May 2011, with knowledge of the '000 patent and its predecessor '069 patent, and with an intent to actively induce infringement of the '000 patent.

41. Teva's use of the COREG® label with the heart failure indication shows that despite its representation to the FDA to the contrary in its Section viii statement, Teva never intended that its generic carvedilol tablets only be used for the uses approved under its ANDA No. 76-373, and not for the heart failure indication.

42. In addition, even prior to its labeling change, Teva caused its generic carvedilol 3.125 mg, 6.25 mg, 12.5 mg and 25 mg tablets to be listed in the Orange Book with a therapeutic equivalence rating of "AB," which indicates that its generic copies are considered therapeutically equivalent to COREG® on all indications approved for COREG®, including the heart failure indication.  On information and belief, since the approval of its ANDA No. 76-373, Teva has actively promoted the "AB" rating of its generic carvedilol tablets and marketed them as therapeutically equivalent to and fully substitutable for GSK's COREG® tablets indicated for treatment of heart failure.

43. On information and belief, Teva knew that when an AB-rated generic drug is available, many states and/or third party payers of prescription drugs (*e.g.*, health insurance

9

plans, Medicare and Medicaid programs) have adopted policies to encourage or require the substitution of the AB-rated generic drugs for the branded drugs, regardless of whether the generic drug label includes all the indications contained in the branded drug label. As a result, Teva knew and intended that its generic copy carvedilol products would be substituted for COREG® even for patients prescribed the drug for treatment of congestive heart failure resulting in the direct infringement of the '000 patent.

## COUNT I

### (Inducement of Infringement)

44. Plaintiffs restate and reallege Paragraphs 1-43 of this Complaint as if fully set forth herein.

45. On information and belief, Teva has been and is actively inducing others to infringe the '000 patent in this District and elsewhere in the United States by making, offering to sell, selling, importing and otherwise promoting and distributing carvedilol 3.125 mg, 6.25 mg, 12.5 mg and 25 mg tablets for decreasing mortality caused by congestive heart failure in patients.

46. On information and belief, healthcare providers administering and/or patients using Teva's generic version of COREG® tablets within the United States for the heart failure indication directly infringe at least one claim of the '000 patent.

47. On information and belief, Teva possessed specific intent to encourage direct infringement of the '000 patent. On information and belief, Teva knew about the original '069 patent at least as of March 6, 2002, when it submitted ANDA No. 76-373 and the requisite certification concerning the '069 patent. Until it was replaced by the reissued '000 patent, the '069 patent had a patent term until June 7, 2015. On information and belief, Teva also knew

about the reissued '000 patent before performing the activities referenced in Paragraph 45 of this Complaint.

48. Alternatively, Teva subjectively believed that there was a high probability that the use of carvedilol tablets for the heart failure indication was protected by a valid patent, and that the activities referenced in Paragraph 45 of this Complaint would actively induce infringement of the patent, but took deliberate steps to avoid confirming these facts, and therefore willfully blinded itself to the infringing nature of its sales of generic copies of COREG®.

49. On information and belief, Teva knew that the administration or use of its generic version of COREG® for the heart failure indication would be an act of direct infringement of the '000 patent, and that the activities referenced in Paragraph 45 of this Complaint would actively induce direct infringement of the '000 patent. On information and belief, despite such knowledge, Teva has been and is actively inducing the infringement of the '000 patent by others.

50. On information and belief, Teva acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. On information and belief, Teva actually knew, or it was so obvious that Teva should have known, that its actions constituted infringement of a valid patent. Teva's infringement is therefore willful.

51. On information and belief, Teva will continue to induce the infringement of the '000 patent unless and until it is enjoined by the Court.

52. As a result of Teva's inducement of infringement of the '000 patent, Plaintiffs have suffered damages, including lost profits.

## COUNT II

### (Contributory Infringement)

53. Plaintiffs restate and reallege Paragraphs 1-52 of this Complaint as if fully set forth herein.

54. On information and belief, Teva has been and is contributing to the infringement of the '000 patent in this District and elsewhere in the United States by making, offering to sell, selling, importing and otherwise promoting and distributing carvedilol 3.125 mg, 6.25 mg, 12.5 mg and 25 mg tablets for decreasing mortality caused by congestive heart failure in patients.

55. On information and belief, healthcare providers administering and/or patients using Teva's generic version of COREG® tablets within the United States for the heart failure indication directly infringe at least one claim of the '000 patent.

56. On information and belief, Teva knew about the original '069 patent at least as of March 6, 2002, when it submitted ANDA No. 76-373 and the requisite certification concerning the '069 patent. Until it was replaced by the reissued '000 patent, the '069 patent had a patent term until June 7, 2015. On information and belief, Teva also knew about the reissued '000 patent before performing the activities referenced in Paragraph 54 of this Complaint.

57. Alternatively, Teva subjectively believed that there was a high probability that the use of carvedilol tablets for the heart failure indication was protected by a valid patent, and that the activities referenced in Paragraph 54 of this Complaint would contribute to the infringement of the patent, but took deliberate steps to avoid confirming these facts, and therefore willfully blinded itself to the infringing nature of its sales of generic copies of COREG®.

58. On information and belief, Teva knew that its generic COREG® tablets were especially made or especially adapted for administration by a healthcare provider or use by a

patient in a manner that would infringe the '000 patent, and that its generic COREG® tablets were not a staple article or commodity of commerce suitable for substantial non-infringing use.

59. On information and belief, Teva acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. On information and belief, Teva actually knew, or it was so obvious that Teva should have known, that its actions constituted infringement of a valid patent. Teva's infringement is therefore willful.

60. On information and belief, Teva will continue to contribute to the infringement of the '000 patent unless and until it is enjoined by the Court.

61. As a result of Teva's contributory infringement of the '000 patent, Plaintiffs have suffered damages, including lost profits.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request for the following relief:

(1) Enter judgment that Teva has induced the infringement of the '000 patent by making, selling, offering to sell and importing generic carvedilol tablets in or into the United States;

(2) Enter judgment that Teva has contributed to the infringement of the '000 patent by making, selling, offering to sell and importing generic carvedilol tablets in or into the United States;

(3) Enter an order preliminarily and permanently enjoining Teva and its affiliates, subsidiaries, officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from infringing the '000 patent;

  (3) Award Plaintiffs damages in an amount sufficient to compensate them for Teva's infringement of the '000 patent, together with prejudgment and post-judgment interest and costs under 35 U.S.C. § 284;

  (4) Find that Teva's infringement has been willful, and treble the damages awarded to Plaintiffs under 35 U.S.C. § 284;

  (5) Declare this case to be exceptional under 35 U.S.C. § 285 and award Plaintiffs their attorney fees, expenses, and costs incurred in this action;

  (6) Perform an accounting of Teva's infringing activities through trial and judgment, and

  (7) Award Plaintiffs such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all issues so triable.

Dated: July 3, 2014        FISH & RICHARDSON P.C.

By: */s/ W. Chad Shear*
W. Chad Shear (#5711)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Tel: (302) 652-5070
Fax: (302) 652-0607
shear@fr.com

OF COUNSEL:

Craig Countryman
Robert M. Yeh
Ryan O'Connor
12390 El Camino Real
San Diego, CA 92130
countryman@fr.com
yeh@fr.com
oconnor@fr.com

Limin Zheng
500 Arguello Street, Suite 500
Redwood City, CA 94063
Tel: (650) 839-5070
Fax: (650) 839-5071
zheng@fr.com

15