IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GLAXOSMITHKLINE LLC and )
SMITHKLINE BEECHAM (CORK) )
LIMITED, )
)
        Plaintiffs, )
)
    v. )     Civil Action No. 14-878-LPS-CJB
)
TEVA PHARMACEUTICALS USA, INC., )
)
        Defendant. )

## MEMORANDUM ORDER

At Wilmington this **3rd day of March, 2016.**

**WHEREAS**, the Court has considered the parties' letter submissions, (D.I. 114, 115),

relating to Plaintiffs GlaxoSmithKline LLC and SmithKline Beecham (Cork) Limited

(collectively, "GSK") pending discovery-related motion, (D.I. 113), as well as the parties'

arguments made during the hearing on March 1, 2016;

**NOW, THEREFORE, IT IS HEREBY ORDERED** that:

1.      With regard to the dispute regarding GSK's Item Nos. 1 and 6[1] (regarding GSK's

requests for Defendant Teva Pharmaceuticals USA, Inc.'s ("Teva") market analysis and forecasts

of sales for generic carvedilol from 2001 to the present, and business analysis of Teva's decision

to switch from a Paragraph IV certification to a Section viii carve-out for its generic carvedilol

tablets in 2007), GSK's requests are GRANTED-IN-PART. Teva objects to these requests on

---

[1]      The "Item Numbers" referred to herein correspond to the categories for which
GSK is seeking documents, as itemized at the beginning of GSK's February 24, 2016 letter.
(D.I. 114 at 1)

the grounds of relevance and further asserts that since the requests implicate documents

stretching well beyond 6 years before the filing of the Complaint, GSK has failed to establish the

requisite good cause to warrant any additional searching. (D.I. 115 at 2; *see also* Default

Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI")

(hereinafter, "Default Standard for Discovery"), at ¶ 4(e) ("Absent a showing of good cause,

follow-up discovery shall be limited to a term of 6 years before the filing of the complaint[.]"))[2]

2. With respect to relevance, Teva asserts that market analyses and forecasts dating

back to before the asserted patent, U.S. Patent No. RE40,000 E (the "'000 patent"), issued in

January 2008, are irrelevant because "the Federal Circuit has made clear [that] 'the general rule is

that inducement of infringement under [Section] 271(b) does not lie when the acts of inducement

occurred before there existed a patent to be infringed.'" (D.I. 115 at 1-2 (quoting *Nat'l Presto*

*Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996), *abrogated on other grounds*

*by Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, 682 F.3d 1003, 1008 (Fed. Cir.

2012)). But at this juncture, GSK has sufficiently explained the relevance of this information to

its theory of Teva's induced infringement and to other issues in the case. (D.I. 114 at 1-2 & n.2

(explaining that "forecasts provide evidence of Teva's business expectations from entering the

generic carvedilol market—evidence potentially confirming that Teva expected to capture a

portion of the market of CHF patients being administered carvedilol" and that such information

is further relevant to issues of objective indicia of non-obviousness related to Teva's validity

challenge against the '000 patent)); *see also* Fed. R. Civ. P. 26(b)(1).

---

[2] The parties explicitly incorporated the Default Standard for Discovery into the
Joint Scheduling Order governing this case. (D.I. 38 at ¶ 1)

3.      On the other hand, if the possible existence of some other relevant, non-produced

documents was always enough to demonstrate good cause to abandon the Default Standard's

requirements, the Standard would be worth little. *Cf. Velocity Press, Inc. v. Key Bank, N.A.*, No.

2:09-CV-520 TS, 2011 WL 1584720, at *3 (D. Utah Apr. 26, 2011) (noting that "[t]he Federal

Rules of Civil Procedure do not impose a duty upon litigants to examine every scrap of paper in

its potentially voluminous files in order to comply with its discovery obligations" and that

instead a party must conduct a "diligent search" pursuant to a "reasonably comprehensive search

strategy") (internal quotation marks and citation omitted).  Admittedly, Teva has not set out in

great detail the nature of the burden (in terms of, for example, time and cost) it would face were

it required to comply with GSK's requests; nor has it explained in great detail why the nature of

that burden would be disproportional to the benefit of this discovery. *See* Fed. R. Civ. P.

26(b)(1), (b)(2)(B) & (b)(2)(C).  And yet in light of the facts here (including the sheer number of

years' worth of documents at issue), the Court understands that Teva would likely face a real

burden, were it required to engage in the requested searches of its five e-discovery custodians.[3]

4.      In light of these competing considerations, the Court finds that good cause has

been shown to allow some additional, targeted searching, but nothing like that of the scope

sought by GSK.  Teva has identified the "two custodians most likely to have" documents

responsive to these requests, and it has produced their respective documents dating back to June

2007. (D.I. 115 at 2)  The Court ORDERS that Teva shall be required to perform a further

---

[3]      Moreover, here there is little assurance that the sought-after documents even exist, with Teva representing that "further searching is unlikely to produce any additional documents" due to the nature of its generic pharmaceutical business and its marketing practices. (D.I. 115 at 2)

search of the custodial documents of these two e-discovery custodians only.  As to the scope of

that search, by no later than **March 23, 2016**, the parties shall:  (1) meet and confer to determine

whether they can reach agreement on a reasonable and focused search that Teva will perform as

to these requests; and (2) submit a joint letter of no more than two single-spaced pages that

informs the Court as to whether the parties have reached agreement on the issue.  If the parties do

not reach agreement, the letter should also include:  (1) GSK's position as to the specific steps

that the Court should order Teva to take, in order to search for these two custodians' documents,

as well as an explanation of why these steps are both reasonable and focused, and (2) a response

from Teva as to why it believes such steps are not appropriate, which sets out an alternate search

protocol.  The Court will thereafter determine which proposed search protocol should be

followed.

   5.  With regard to GSK's Item Nos. 2, 3, 4 and 5 (regarding GSK's requests for

internal analyses regarding Teva's manufacturing decisions and patent enforcement relating to

carvedilol), it seems even more clear that the requested searches could amount to a fishing

expedition, as they would "involve departments and employees (such as the legal department or

Teva's manufacturing group) that are far removed from the actual selling of Teva's carvedilol

tablets." (D.I. 115 at 4)  While GSK proffered an explanation for the relevance of these

documents, (D.I. 114 at 1 (explaining that these "business-related documents are evidence of

Teva's expectations for its revenues and profits from selling generic carvedilol, and likely

include an analysis of the market for generic carvedilol in the United States")), the Court is

concerned about the burden the requested searches would impose upon Teva with the potential

for little reward, (*see* D.I. 115 at 4 (Teva representing that it has "already produced its

expectations, forecasts, and actual sales results for its generic carvedilol tablets") (emphasis

omitted)). Indeed, at present, the Court is not yet convinced that there is good cause for any

further search regarding these topics.[4] At the hearing, GSK expressed a willingness to attempt to

craft a narrower search protocol regarding these requests; this might impact the Court's final

decision. Accordingly, by no later than **March 23, 2016**, the parties shall: (1) meet and confer

to determine whether they can reach agreement on a reasonable and focused search that Teva will

perform with respect to these requests; and (2) submit an additional joint letter of no more than

two single-spaced pages that informs the Court whether the parties have reached an agreement on

the issue. If the parties do not reach agreement, the letter should also include: (1) GSK's

position as to the specific steps that the Court should order Teva to take, in order to locate

responsive documents, as well as an explanation of why these steps are both reasonable and

focused, and (2) a response from Teva as to why it believes either that no search (or a more

limited search than GSK seeks) is appropriate. The Court will resolve the issue at that point.

      6.      With regard to GSK's Item No. 7, in light of Teva's response that it has produced

any non-privileged documents that exist as to these topics, (D.I. 115 at 4), the Court understands

this issue to now be MOOT.

      7.      With respect to the dispute regarding GSK's Interrogatory No. 2, which asks for

the facts and circumstances regarding Teva's decision to replace its Paragraph IV certification

with a Section viii carve-out before final FDA approval for its generic carvedilol, GSK's request

is GRANTED. While Teva's objection to this request is based solely on relevance, GSK has

---

[4]     In fact, in line with what Teva argues, (D.I. 115 at 3), the Court does not
understand how most, if not all, of the requests for production cited in GSK's letter, (D.I. 114 at
1 n.1), even relate to these topics.

sufficiently explained the relevance of this information to its theory of Teva's induced

infringement. (D.I. 114 at 2 (explaining that "Teva's internal analysis of the impact of switching

from a Paragraph IV certification to a Section viii carve-out is evidence of whether Teva

anticipated that not having the CHF indication on its label would actually impact their revenue

projections from selling generic carvedilol")) The Court ORDERS that Teva shall provide a

supplemental response to Interrogatory No. 2 by no later than **March 23, 2016**.

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE