# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GLAXOSMITHKLINE LLC and SMITHKLINE BEECHAM (CORK) LIMITED<br><br>Plaintiffs,<br><br>v.<br><br>TEVA PHARMACEUTICALS USA, INC.<br><br>Defendant. | C.A. No. 14-878-LPS-CJB |

## **MEMORANDUM ORDER**

At Wilmington this **25th** day of **May, 2017**, having reviewed the proposed pretrial order submitted by GlaxoSmithKline LLC, SmithKline Beecham (Cork) Limited ("GSK" or "Plaintiffs") and Teva Pharmaceuticals USA, Inc. ("Teva" or "Defendant") (D.I. 356, 360) ("PTO"), including briefing on various motions *in limine* ("MIL"),

**IT IS HEREBY ORDERED** that:

1. GSK's MIL #1, to preclude Teva from arguing that physicians do not read generic drug labels, is DENIED. The evidence GSK seeks to exclude is relevant to the intent element of GSK's induced infringement claim and to damages. Unlike in a Hatch-Waxman case, this case involves an already-marketed product; evidence as to how many, if any, physicians and patients read the label on Teva's product (and Teva's understanding of how often its label is read) is probative evidence of Teva's intent and of the amount of damages Teva may owe GSK. The jury, properly instructed, is not so likely to be misled or confused as to render the Rule 403 balance one in which this relevant evidence should be excluded. Nor is the risk of unfair

prejudice nor waste of time so great as to cause the concerns of Rule 403 to substantially outweigh the probative weight of Teva's evidence.

2. GSK's MIL #2, to preclude Teva from referencing foreign patent proceedings, is GRANTED. Neither side shall inform the jury of the existence or outcome of any foreign patent proceedings. Such evidence is not relevant to any of the issues in the case and, even if it were, its probative value would be substantially outweighed by the risk of confusion of the jury and unfair prejudice to GSK. However, evidence that is otherwise relevant and admissible or otherwise permitted by the Rules of Evidence – such as portions of the prosecution history developed before the U.S.P.T.O., or prior inconsistent testimony – is not excluded by this Order solely because such evidence may also have been part of a foreign patent proceeding.

3. GSK's MIL #3, to preclude Teva from referencing its patents related to manufacturing carvedilol, is DENIED. This evidence is relevant at least to damages. The parties should include in their proposed final jury instructions an instruction that ensures the jury will not mistakenly conclude that Teva cannot infringe GSK's asserted patent solely because Teva has its own patents. GSK's concern that a properly-instructed jury will somehow reach a conclusion contrary to the law is unpersuasive. The probative value of Teva's evidence substantially outweighs the risks identified by GSK.

4. The parties should be prepared to address Teva's MIL #1, to preclude GSK from offering any testimony from their patent law expert (Nicholas Godici), at the pretrial conference ("PTC"), tomorrow.

5. Teva's MIL #2, to exclude testimony from GSK's medical expert (Peter McCullough) regarding Teva's intent and state of mind, is DENIED. Just as evidence as to

whether and how often physicians read Teva's labels (and what Teva knows about how often this happens) is probative of Teva's intent (*see supra* at ¶ 1), so, too, is the expert opinion of Dr. McCullough, as to how Teva's actions (including marketing materials) are understood by physicians. The Court agrees with GSK that "[e]xpert testimony is appropriate to demonstrate how a person of skill in the art would understand Teva's actions and communications because those actions and communications include technical information that goes beyond the jury's knowledge." (D.I. 360-2 Ex. 11 at GSK Ans. at 2) The Rule 403 balance does not provide a meritorious basis to exclude the challenged testimony.

6. Teva's MIL #3, to exclude expert testimony regarding Teva's generic product's AB-rating and Teva's "inaction" (i.e., not telling physicians, pharmacists, and others that Teva's generic product was not FDA approved to reduce the risk of mortality caused by heart failure, during a particular period), is DENIED. This evidence is relevant to GSK's induced infringement claim; the risks of unfair prejudice, confusion of the jury, or any of the other concerns of Rule 403 do not substantially outweigh the probative value of this evidence. GSK does not rely solely on the AB-rating to support its inducement claim for the "skinny label" period, but rather the rating "*in combination with* other facts, such as [Teva] juxtaposing its AB-rating next to COREG® in informational material without mentioning that its carvedilol was not approved for heart failure." (D.I. 360-2 Ex. 11 at GSK Br. at 3) Teva should propose jury instructions that preclude the possibility GSK will "attempt to confuse the jury into drawing a legally impermissible inference." (D.I. 360-2 Ex. 11 at Teva Rep. Br. at 1)

7. Having identified certain disputes in the PTO, **IT IS FURTHER ORDERED** that:

a. With respect to identifying and advising the Court of objections related to deposition testimony, the Court adopts GSK's proposal (PTO at 12-13) provided that the deadlines are modified so that the Court receives a submission with respect to any unresolved objections no later than 7:00 p.m. two (2) nights before the testimony will be offered (e.g., by 7:00 p.m. Monday for testimony to be offered on Wednesday).

b. The Court adopts GSK's proposal (PTO at 16) with respect to use of documents not specifically identified or offered for admission.

c. The Court adopts Teva's proposal (PTO at 18) to require the parties to exchange in advance demonstratives to be used in opening statements and closing arguments.

d. The Courtroom Deputy will keep a running total of trial time used by counsel. If any party uses all of its allotted trial time, the Court *will* terminate that party's trial presentation. (*See* PTO at 20)

The parties shall be prepared to discuss any remaining disputes in the PTO, as well as any pending motions, at tomorrow's pretrial conference.

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

4