IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GLAXOSMITHKLINE LLC, SMITHKLINE BEECHAM (CORK) LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> TEVA PHARMACEUTICALS USA, INC., <br><br> Defendant. | C. A. No. 14-878-LPS-CJB |
| GLAXOSMITHKLINE LLC and SMITHKLINE BEECHAM (CORK) LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> GLENMARK PHARMACEUTICAL INC., USA, <br><br> Defendant. | C. A. No. 14-877-LPS-CJB |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO
THE REPORT AND RECOMMENDATION REGARDING LOST PROFITS**

FISH & RICHARDSON P.C.
Douglas E. McCann (#3852)
Elizabeth M. Flanagan (#5891)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Tel.: (302) 652-5070
Fax: (302) 652-0607
dmccann@fr.com; eflanagan@fr.com

Dated: June 7, 2017

OF COUNSEL:

Juanita R. Brooks
Jonathan E. Singer
Michael A. Amon
Robert M. Yeh
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel.: (858) 678-5070
Fax: (858) 678-5099
brooks@fr.com; singer@fr.com;
amon@fr.com; ryeh@fr.com

Dated: June 7, 2017

Michael J. Kane
William R. Woodford
Phillip W. Goter
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Tel: (612) 335-5070
Fax: (612) 288-9696
kane@fr.com; woodford@fr.com
goter@fr.com

**Attorneys for Plaintiffs GlaxoSmithKline and SmithKline Beecham (Cork) Limited**

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT ...................................................................................................................2

    A. GSK's Evidence Establishes Causation and the Amount of Infringement ......................................................................................................2

    B. Judge Burke Correctly Determined That Infringing Use of Carvedilol from Other Generics Was Not a Permissible Alternative in the But-For World .................................................................6

III. CONCLUSION ..............................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alt Ana Pharma AG v. Teva Pharms. USA, Inc.*,
   2013 WL 12157835 (D.N.J. May 14, 2013) .................................................................................9

*AstraZeneca LP v. Apotex, Inc.*,
   633 F.3d 1042 (Fed. Cir. 2010) ....................................................................................................2

*Black & Decker v. Bosch*,
   No. 04 C 7955, 2006 WL 3883286 (N.D. Ill. Dec. 18, 2006) .....................................................4

*Bros Inc. v. W.E. Grace Mfg. Co.*,
   320 F.2d 594 (5th Cir. 1963) ....................................................................................................8, 9

*Dynacore Holdings Corp. v. US. Philips Corp.*,
   363 F.3d 1263 (Fed. Cir. 2004) ....................................................................................................3

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
   2017 WL 1322555 (E.D. Tex. Apr. 6, 2017) ...............................................................................5

*Eli Lilly & Co. v. Actavis Elizabeth LLC*,
   435 F. App'x 917 (Fed. Cir. 2011) ...............................................................................................2

*Grain Processing Corp. v. American Maize-Prods. Co*,
   185 F.3d 1341 (Fed. Cir. 1999) ............................................................................................6, 7, 9

*Hilgraeve, Inc. v. Symantec Corp.*,
   272 F. Supp. 2d 613 (E.D. Mich. 2003) .......................................................................................4

*Intellectual Ventures I v. Symantec Corp.*,
   2017 WL 639638 (D. Del. Feb. 13, 2017) ...................................................................................5

*Lee's Aquarium & Pet Prod., Inc. v. Python Prod., Inc.*,
   1998 WL 129903 (Fed. Cir. Mar. 24, 1998) ..............................................................................10

*Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*,
   976 F.2d 1559 (Fed. Cir. 1992) ....................................................................................................6

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
   575 F.2d 1152 (6th Cir. 1978) ........................................................................................2, 6, 8, 9

*Polymer Techs., Inc. v. Bridwell*,
   103 F.3d 970 (Fed. Cir. 1996) ....................................................................................................10

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    711 F.3d 1348 (Fed. Cir. 2013) (*Power I*) ..................................................................4

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016)..................................................................................3

*Rite-Hite Corp. v. Kelley Co., Inc.*,
    56 F.3d 1538 (Fed. Cir. 1995)....................................................................................2

*Sidel v. Uniloy Milacron, Inc.*,
    2001 WL 1772918 (N.D. Ga. Nov. 14, 2001) .........................................................10

*State Indus., Inc. v. Mor-Flo Indus., Inc*,
    883 F.2d 1573 (Fed. Cir. 1989)..................................................................................6

I.      INTRODUCTION

Magistrate Judge Burke correctly denied Defendants' motions seeking to preclude GSK from recovering the lost profits it suffered due to Defendants' infringement and correctly granted GSK's *Daubert* motions to prevent Defendants' experts from offering opinions contrary to law. Neither of the two points Defendants now raise is sufficient to overturn Judge Burke's thorough, 31-page opinion, which carefully considers and rejects them both.

On Defendants' first point, GSK presented ample evidence that Defendants induce infringement by a *class* of third-parties—doctors who administer Defendants' carvedilol to treat heart failure as claimed in GSK's patent. As explained in GSK's other briefing on inducement, the jury could infer that Defendants' conduct has caused the infringement based on the significant circumstantial evidence offered by GSK. For example, Defendants' labels and other marketing materials are targeted at doctors and instruct them to use Defendants' carvedilol in an infringing manner. GSK's cardiologist expert testified that he did, in fact, read Defendants' labels in the relevant period and used them to guide his treatment of heart failure patients. A jury could thus infer that Defendants' activities caused infringement, and, under Federal Circuit precedent, the jury could also conclude that this causation applies to the entire class of infringing doctors.

Defendants' second point relies on the legally erroneous premise that they can avoid lost profits liability by identifying an alternative (*i.e.*, doctors using generic carvedilol from other suppliers) that would still result in infringing conduct. Courts have rejected that idea for at least 50 years, with one calling it a "novel and startling" proposition. That precedent applies directly here. The "but for" world can consider only non-infringing alternatives. Here, doctors could not use generic carvedilol from other suppliers to perform the patented method without infringing, so this is not a permissible alternative. GSK's lost profits theory thus properly includes those sales.

## II.     ARGUMENT

### A.     GSK's Evidence Establishes Causation and the Amount of Infringement.

Magistrate Judge Burke correctly applied the legal requirements of "but for" causation for lost profits.  As the R&R points out (at 9), the *Panduit* test provides an accepted, non-exclusive framework for a patentee to show "but for" causation and resulting damages.  *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978).  GSK's evidence established each of the four *Panduit* factors.  As a result, the Court could reasonably infer that GSK's alleged lost profits were caused by the infringing sales, and thus establish GSK's *prima facie* case with respect to "but for" causation.  *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).  Because GSK made a *prima facie* case of causation, the burden shifts to Defendants to show that the inference is unreasonable for some or all of the lost sales, which they have failed to do.  *Id.*

Defendants are wrong in their Objections that GSK provided no evidence of causation.  As explained in GSK's prior briefing (D.I. 297, 384, 403), Defendants' labels can establish that they induced direct infringement for *every* sale of Defendants' carvedilol throughout the entire damages period.  *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1056-1061 (Fed. Cir. 2010); *Eli Lilly & Co. v. Actavis Elizabeth LLC*, 435 F. App'x 917, 926-27 (Fed. Cir. 2011) ("We have long held that the sale of a product specifically labeled for use in a patented method constitutes inducement to infringe that patent.").  In *AstraZeneca*, the court also concluded that the label established causation by finding that "the proposed label would *cause* some users to infringe the asserted method claims" and the label would "*inevitably lead* some consumers to practice the claimed method."  *Id.* at 1057, 1060 (emphasis added).  Although Defendants' labels alone are sufficient to defeat summary judgment, GSK also identified other evidence of inducement that applied to *every* sale of carvedilol during the damages period.  (*See, e.g.*, D.I. 298, Ex. 2 at ¶¶ 83-

96, 138-143; *id.* Ex. 39 at 82:24-83:6; D.I. 356-2, Ex. 11 at Pltf. Opp. to Teva MIL #3 & Ex. 1 at ¶¶ 93-102; D.I. 60, Ex. K.; *id*. Ex. L.)

Defendants suggest that GSK may only seek damages for individual doctors where there is direct evidence that Defendants' labels and other marketing materials caused their infringement, but the Federal Circuit has repeatedly rejected that approach.  The Court has held that a plaintiff can prove that a defendant's conduct induces a ***class*** of customers to infringe and to collect damages for that entire class.  *See, e.g.*, *Dynacore Holdings Corp. v. US. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004) ("Plaintiffs who identify an entire category of infringers (e.g., the defendant's customers) may cast their theories of vicarious liability more broadly, and may consequently seek damages . . . across the entire category."); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016) ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").  The plaintiff needs only to identify the defendant's acts aimed at influencing customers and the class of customers to whom they were targeted.  *Id*.  GSK has done precisely that here—it has identified Defendants' labels, press releases, and other materials promoting their AB-rating and shown they are all directed at inducing doctors to infringe.  Judge Burke thus correctly determined that GSK may seek damages for the entire class of doctors.  (D.I. 383 at 28 n.10.)

The R&R further reinforced these principles by citing *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1 F. App'x 879, 883-84 (Fed. Cir. 2001), which Defendants had heavily relied upon in their briefing before Judge Burke but now abandon in their Objections.

3

There, the Federal Circuit stressed that a plaintiff seeking inducement damages from the defendant who sells a product that may or may not be used to infringe must establish "the connection between sales and direct infringement." *Id.* at 883. The Court added, however, that a patentee need not "demonstrate a one-to-one correspondence between units sold and directly infringing customers" and reiterated black-letter law that proof of damages may be shown by circumstantial evidence. *Id*. at 884. Other district courts have faithfully applied those principles. *See Hilgraeve, Inc. v. Symantec Corp*., 272 F. Supp. 2d 613, 621 (E.D. Mich. 2003); *Black & Decker v. Bosch*, No. 04 C 7955, 2006 WL 3883286, at *2 (N.D. Ill. Dec. 18, 2006). And that is precisely what Judge Burke did too—he correctly found that GSK's evidence is sufficient to establish the required connection, because "GSK's damages expert relied on the Reisetter Survey to determine the amount of Defendants' sales that did directly infringe the patented method." (D.I. 383 at 27.) In particular, GSK's expert confined his lost profits calculation to only the 17% of Defendants' sales that were actually tied to the infringing use. (D.I. 299, Ex. 80 at ¶ 17.) That evidence was more than sufficient.

Defendants' reliance on *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348 (Fed. Cir. 2013) (*Power I*) is misplaced. *Power I* had nothing to do with Defendants' complaints here. Instead, the Court held that the plaintiff had failed to prove induced infringement because there was no evidence of underlying direct infringement, *i.e.,* no evidence that any infringing power chips had entered the United States during the relevant period. *Id*. at 1372-74. The plaintiff had attempted to prove underlying direct infringement by pointing to data on U.S. sales of mobile phones and assuming that each phone sold in the U.S. was sold with a charger, and then further assuming that some percentage of those chargers would have contained infringing chips. *Id*. at 1373-74. The Court held that insufficient because

4

evidence about the number of U.S.-bound phones did not necessarily correlate to the number of infringing chips in the U.S.  Here, by contrast, GSK did not make any assumptions about how doctors use defendants' carvedilol—GSK asked a representative sample of doctors all the questions needed to establish whether their use met all the claim limitations, and then confined its damages calculations to only the 17% of Defendants' sales that were used in an infringing manner.  (D.I. 299, Ex. 59 at ¶¶ 41-54; D.I. 299, Ex. 80 at ¶ 16.)  The R&R thus correctly determined that GSK, having presented evidence directly addressing the percentage of Defendants' sales that directly infringe, may seek damages for that entire class of customers using circumstantial evidence to show that Defendants' conduct caused that class to use carvedilol in an infringing manner.  (D.I. 383 at 28 n.10, *citing Dynacore*, 363 F.3d at 1274.)

  Neither of Defendants' cited district court cases (at 6) supports their position either.  For example, in *Intellectual Ventures I v. Symantec Corp.*, 2017 WL 639638, at *7 (D. Del. Feb. 13, 2017), the defendant argued that, although the plaintiff had shown a certain number of customers had bought the product, there was no direct evidence they had actually installed and used it, as required for infringement.  The Court rejected this argument and denied summary judgment of no damages, noting that the plaintiff had introduced evidence that customers did in fact install and use that expensive software.  *Id.* at *8.  By contrast, in *Eidos Display, LLC v. Chi Mei Innolux Corp.*, 2017 WL 1322555, at *7 (E.D. Tex. Apr. 6, 2017), the Court refused to permit expert testimony about the number of LCD televisions generally sold in the U.S., where only some unspecified percentage of them were actually infringing and where there was no data indicating the percentage of televisions that each of the defendants had manufactured.  Here, GSK has presented evidence similar to that accepted in *Intellectual Ventures* and far better than that rejected in *Eidos*.  GSK's survey shows the specific number of doctors that use Defendants'

carvedilol in an infringing manner, and GSK seeks damages only on carvedilol actually sold by these Defendants, as opposed to other generic manufacturers.

Finally, it is worth noting that courts have recognized that the "but for" inquiry is necessarily hypothetical and that damages need not be proved with unerring precision. *Grain Processing Corp. v. American Maize-Prods. Co*, 185 F.3d 1341, 1350 (Fed. Cir. 1999); *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1579 (Fed. Cir. 1992). A patent holder need only show a "**reasonable probability**" that, but for the infringement, it would have made the infringer's sales." *State Indus., Inc. v. Mor-Flo Indus., Inc*, 883 F.2d 1573, 1577 (Fed. Cir. 1989) (emphasis added). GSK has met that standard here.

### B. Judge Burke Correctly Determined That Infringing Use of Carvedilol from Other Generics Was Not a Permissible Alternative in the But-For World.

Magistrate Judge Burke also correctly determined that Defendants may not escape liability for lost profits by pointing to generic carvedilol from other suppliers as an acceptable, available non-infringing alternative and properly excluded Defendants' expert testimony to that effect. (D.I. 383 at 13-14, n.6.) GSK has established direct infringement that the administration of Defendants' generic carvedilol products for heart failure infringes the patent-in-suit, (*see* D.I. 298, Ex. 2 at ¶¶ 83-96, 138-143), and the generic carvedilol supplied by others manufacturers is materially identical to Defendants' products. Thus, Defendants cannot (and do not) seriously dispute that the administration of carvedilol from other generic suppliers according to the claimed methods would also directly infringe the claims. Indeed, Defendants' entire premise is that generic carvedilol supplied by others would be fully interchangeable with their own products. Judge Burke thus correctly determined that generic carvedilol from other suppliers is not a non-infringing alternative and not something that Defendants' can use to defeat lost profits under *Panduit* factor 2 (the "absence of acceptable noninfringing substitutes"). *Panduit*, 575

6

F.2d at 1156; *Grain Processing*, 185 F.3d at 1350 (explaining that the "but for" world must be constructed to demonstrate "likely outcomes with ***infringement factored out of the economic picture***" and that "[t]he 'but for' inquiry therefore requires a reconstruction of the market, as it would have developed ***absent the infringing product***").

      The denial of summary judgment and the exclusion of certain opinions of Defendants' experts was correct because Defendants simply ignore the legal requirement that any alleged substitute must be "noninfringing."  For example, Teva's damages expert admits that he ignored for purposes of his opinions whether third-party generic carvedilol infringes: "I'm agnostic about whether any of those prescriptions actually infringe any patent." (D.I. 312-1, Ex. 3 at 77:4-6.) Similarly, Defendants, in their original summary judgment briefing, discussed "acceptable substitutes" to Teva's and Glenmark's generic carvedilol, but flatly ignored the legal requirement that acceptable alternatives be non-infringing.  (D.I. 249 at 30.)  In fact, the only place Defendants argued that others' generic carvedilol is non-infringing was at oral argument before Judge Burke, but they failed to explain why and, instead, doubled down on their flawed legal position, arguing "but it doesn't matter." (D.I. 355 (3/24/17 Hrg. Tr.) at 107:1-7.)

      Recognizing this problem, Defendants now argue (at 7) that sales of carvedilol by other generic suppliers is "lawful" because there is no evidence that those suppliers are guilty of induced infringement.  But that misses the point.  It doesn't matter whether the ***sales*** by other generic suppliers would be non-infringing, because the ultimate ***use*** of those products by doctors ***would*** be infringing and thus not a permissible consideration.  In the "but for" world, doctors could not use any other generic supplier's carvedilol to treat heart failure in the manner claimed, because that would be an infringing use.  So doctors would not have any generic carvedilol

7

available to them in the "but for" world for use in the patented method, and, as such, GSK would capture carvedilol drug sales to any doctors who wanted to perform the patented method.

Judge Burke's analysis on this issue was dead-on. (D.I. 383 at 12-14.) As he explained, "a defendant cannot argue that the sale of its own product would have been replaced by the sale of some other party's infringing product, for purposes of calculating lost profits damages." (*Id*. at 13.) He aptly illustrated the point by discussing *Bros Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594 (5th Cir. 1963), which reversed a district court decision that reduced a damages award on the theory that Defendants argue here. In particular, the district court in *Bros* determined that two-thirds of the defendant's infringing sales were not subject to lost profits damages because they would have been made by other competitors, even though the competitors' products were also infringing. *Id*. at 598. The Fifth Circuit rejected this "novel and startling" theory, because under this logic, an "infringer who has made substantial profits from purloining another's patent is not made to account for his acknowledged acts because had he not poached, another would or, at any rate, sales of similar products would have been made, not by the patent owner, but by others." *Id*. Defendants ask the Court to make the same error here, by pointing to other generic suppliers whose products could not have been used by doctors as a substitute without the doctors directly infringing the patent-in-suit.

Judge Burke's analysis was particularly persuasive because he noted that Teva itself has invoked the principle that infringing conduct may not be considered in the "but for" world as a plaintiff in another case similar to this one. (D.I. 383 at 13-14, *citing Alt Ana Pharma AG v. Teva Pharms. USA, Inc.*, 2013 WL 12157835 (D.N.J. May 14, 2013).) There, "Teva maintain[ed] that it would be legally inappropriate for [a generic's damages expert] to opine 'that [the generic] should not have to pay damages to Plaintiffs for the infringing sales that [it] made

8

because, if [it] had not made those sales, some other infringer might have made them instead.'" *Id.* at *7. The court agreed, holding that "the presence of other infringing generics in the marketplace does not defeat [plaintiffs]' entitlement to lost profit damages on [defendant's] sales." *Id.* at *8. Judge Burke correctly reached that same conclusion here. (D.I. 383 at 13-14.)

Defendants' other arguments should likewise be rejected, because they either rely on disputed facts or are just plain false. For example, GSK has never argued that Defendants' sales in the but-for world "automatically" go to GSK, as Defendants assert (at 7). To the contrary, Dr. Maness concluded that only 43% of those infringing sales would have been captured by GSK. (D.I. 299, Ex. 80 at ¶ 17.) Also, GSK disputes Defendants' allegations that physicians used generic carvedilol for the patented method "regardless of the label or any other conduct challenged in this case," as fully explained in GSK's other briefing on Defendants' inducement motion. (D.I. 394 at 7.) The facts actually show the opposite is true—Defendants induced physicians to infringe by distributing their labels, promoting their AB-rating, and issuing press releases stressing that their drug could be used to treat heart failure. (*See, e.g.,* D.I. 298, Ex. 2 at ¶¶ 83-96, 138-143; *id*. Ex. 39 at 82:24-83:6; D.I. 356-2, Ex. 11 at Pltf. Opp. to Teva MIL #3 & Ex. 1 at ¶¶ 93-102; D.I. 60, Ex. K.; *id.* Ex. L.)

Defendants' arguments (at 8-9) that the court should ignore the doctors' infringing conduct because those doctors are not competitors or because prior cases did not deal with method claims are also wrong. Prior precedent holds that infringing conduct may not be considered in the "but for" analysis, full stop. *See, e.g.*, *Panduit*, 575 F.2d at 1156; *Grain Processing*, 185 F.3d at 1350; *Bros*, 320 F.2d at 598; *Alt Ana Pharma*, 2013 WL 12157835, at *8. As a result, Defendants cannot argue that doctors in the "but for" world would use carvedilol from other generic suppliers, because that use would be infringing and thus not an alternative

9

that is available to them. It doesn't matter whether the other generic manufacturers would be inducing infringing or not, because the doctors could not use the carvedilol purchased from another generic supplier to perform the patented method without infringing.[1] As a result, the only option available to doctors in the "but for" world who want to use carvedilol to perform the claimed method would be to buy Coreg® from GSK. Judge Burke thus correctly rejected Defendants' suggestion that GSK cannot recover lost profits on those sales.

The bottom line is that Defendants' motions rely on a legal premise (*i.e.,* that infringing uses may be considered an alternative in the "but for" world) that conflicts with decades of precedent. As Judge Burke correctly observed, "Defendants have not pointed the Court to any case standing for the proposition that—in the context of a claim for induced infringement of a method of use patent—a proper lost profits damages analysis would treat a use that would directly infringe the patent as a 'non-infringing alternative,' so long as the plaintiff does not show that that use was also induced by another." (D.I. 383 at 12.) Defendants' current objections do not do so either, because there is no such case. Judge Burke was thus correct to recommend denial of their motions and the corresponding grant of GSK's motions to prevent Defendants' experts from relying on a legally erroneous defense to lost profits.

## III. CONCLUSION

For the reasons above, GSK respectfully requests that the Court adopt the R&R in whole, including the portions not challenged by Defendants in their objections.

---

[1] Defendants' comments criticizing GSK for not having sued other generic manufacturers are also all irrelevant, because the law is clear that a patentee need not sue every infringer in order to obtain the full remedies to which it is entitled against the infringers that it does pursue. *See Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975 (Fed. Cir. 1996); *Lee's Aquarium & Pet Prod., Inc. v. Python Prod., Inc.*, 1998 WL 129903, at *5 (Fed. Cir. Mar. 24, 1998); *Sidel v. Uniloy Milacron, Inc.*, 2001 WL 1772918, at *10 (N.D. Ga. Nov. 14, 2001).

Dated: June 7, 2017

FISH & RICHARDSON P.C.

By: */s/ Elizabeth M. Flanagan*
    Douglas E. McCann (#3852)
    Elizabeth M. Flanagan (#5891)
    222 Delaware Avenue, 17th Floor
    Wilmington, DE 19801
    Tel.: (302) 652-5070
    Fax: (302) 652-0607
    dmccann@fr.com; eflanagan@fr.com

OF COUNSEL:

Juanita R. Brooks
Jonathan E. Singer
Michael A. Amon
Robert M. Yeh
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel.: (858) 678-5070
Fax: (858) 678-5099
brooks@fr.com; singer@fr.com;
amon@fr.com; ryeh@fr.com

Michael J. Kane
William R. Woodford
Phillip W. Goter
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Tel: (612) 335-5070
Fax: (612) 288-9696
kane@fr.com; woodford@fr.com
goter@fr.com

**Attorneys for Plaintiffs GlaxoSmithKline and SmithKline Beecham (Cork) Limited**